United States District Court
Southern District of Texas
**ENTERED**
November 18, 2020
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| THE NORMANDIE OZ, LLC, § § Plaintiff, § § v. § § INTERRA-SKY NORMANDIE, LLC, § § Defendant. § | CIVIL ACTION NO. H-20-1069 |

## MEMORANDUM AND OPINION

This lawsuit reflects some of the hardships Puerto Rico has suffered in recent years. The court is asked to issue a temporary restraining order that would, in effect, derail a potential contract to buy the Normandie Hotel, a once-elegant 1940s-era property in San Juan. The Normandie Oz, LLC, which had a contract to acquire the property, has moved, on an emergency basis, for a temporary restraining order granting: (1) leave to file a cautionary note, a lis pendens equivalent, under Article 44(2) of the Puerto Rico Property Registry Law; and (2) an injunction under Federal Rule of Civil Procedure 65 prohibiting Interra-Sky Normandie, LLC, the Hotel owner, and its agents from selling, transferring, or assigning the Hotel. (Docket Entry No. 14).

The parties have quickly and thoroughly briefed the issues and assembled evidence. The court held a hearing on the motion on November 16, 2020. Based on the pleadings, the motion, the record, the briefs and responses, and the arguments of counsel, the court finds that The Normandie Oz has failed to meet its burden for the relief it seeks. The temporary restraining order is denied. A preliminary injunction hearing is set for **December 14, 2020, at 9:30 a.m.**

**I.     Background**

The Normandie Hotel in Isleta de San Juan, Puerto Rico, was designed and built by Puerto Rican engineer Feliz Benitez Rexach. Its elegant features made it a popular destination for celebrities back in the day. In 1980, the Hotel was added to the United States National Register of Historic Places. (Docket Entry No. 14-1 at 82–86).

In 2017 and 2018, a buyer group entered into contracts with Interra-Sky to purchase the Hotel. According to Interra-Sky, after signing each contract, the buyers group exercised its "contractual 'outs'" and avoided closing on the property. (Docket Entry No. 7 at 1). In July 2019, NHOZ, LLC, and Interra-Sky entered into a contract to purchase the property for $8,000,000.[1] On July 30, 2019, the parties agreed to amend their contract, assigning NHOZ's contractual rights to The Normandie Oz. (Docket Entry No. 1-3). As required by that Purchase Agreement, The Normandie Oz put an $800,000 deposit in escrow. The Normandie Oz states that it purchased the Hotel hoping to make use of tax credits tied to the preservation of the Hotel's historic features. Under the Purchase Agreement, the closing date was the earlier of 45 days after The Normandie Oz sent Interra-Sky written notice of intent to close or March 27, 2020. (Docket Entry No. 13-1 at 22).

On August 21, 2019, The Normandie Oz sent representatives to the Hotel. They took photographs of the Hotel's rooms and features. On February 25, 2020, The Normandie Oz did another inspection of the Hotel, discovering and photographing extensive damage that had not been present in August 2019. According to The Normandie Oz, the damage is so extensive as to disqualify the Hotel owner from using the preservation-based tax credits unless substantial repairs are made. The Normandie Oz asserts that Interra-Sky, the Hotel owner, was obligated to make

---

[1] It is unclear whether NHOZ, LLC was the buyers group that entered into contracts with Interra-Sky in 2017 and 2018 or if NHOZ, LLC was a member of that buyers group.

2

those repairs because the Purchase Agreement required Interra-Sky to "maintain" the Hotel, which The Normandie Oz asserts means to maintain in a condition that supports the historic designation and eligibility for the preservation tax credits.

On March 4, 2020, The Normandie Oz sent Interra-Sky a letter discussing the damage, its effect on the Hotel's eligibility for the preservation tax benefits, and Interra-Sky's alleged breach of its obligation to maintain the Hotel. The Normandie Oz asked for a 270-day extension of the Purchase Agreement's closing date and for "provisions [to be] made for (a) the obtainment of a determination . . . indicating what repairs will be necessary . . . and (b) the amount finally determined as needed to be incurred in order to repair the damages." (Docket Entry No. 14-1 at 69). Interra-Sky denied that it was responsible for the damage or repairs.

On March 20, 2020, The Normandie Oz sent another letter, asserting that Interra-Sky materially breached the Purchase Agreement by not preserving and maintaining the property. The letter was to "serve[] as formal notice" of The Normandie Oz's termination of the Agreement and demand for return of its $800,000 deposit. (Docket Entry No. 14-1 at 75). The Normandie Oz gave an ultimatum: if Interra-Sky did not return the deposit by March 25, 2020, The Normandie Oz would "take legal action." (*Id.*). Interra-Sky did not return the deposit. The Purchase Agreement required the return of the deposit only if The Normandie Oz notified Interra-Sky of a "new and material environmental condition not previously disclosed on the environmental reports provided to [The Normandie Oz]" within thirty days of the Agreement's effective date, July 1, 2019. (Docket Entry No. 1-2 at 28).

On March 25, 2020, The Normandie Oz brought this action for breach of contract and for a declaratory judgment. The Normandie Oz alleges that Interra-Sky breached the Purchase Agreement by not maintaining the property. For relief, The Normandie Oz seeks one of four

alternatives: (a) damages caused by Interra-Sky's breach of the Purchase Agreement; (b) rescission of the Purchase Agreement and refund of the deposit and out-of-pocket expenses; (c) specific performance, including an order requiring Interra-Sky to either (i) repair the damage or (ii) abate the Hotel's purchase price; or (d) a declaratory judgment as to the parties' rights and obligations under the Purchase Agreement. The Normandie Oz also seeks its attorney's fees and costs. (Docket Entry No. 1 at 13).

Interra-Sky answered, asserting several defenses and generally denying liability under the Purchase Agreement. Unsurprisingly, Interra-Sky offers a different interpretation of the Agreement. Interra-Sky asserts that the Hotel damage did not give The Normandie Oz a basis to terminate the Purchase Agreement. Because The Normandie Oz did not close on the Hotel by March 27, 2020, Interra-Sky alleges, it breached the Purchase Agreement. Interra-Sky counterclaimed for a declaratory judgment that: (1) Interra-Sky did not breach, or did not materially breach, the Purchase Agreement; (2) the damage to the Hotel did not result from any Interra-Sky breach, but rather from earthquakes; (3) The Normandie Oz breached the Purchase Agreement by failing to close by March 27, 2020, which entitles Interra-Sky to keep the $800,000 deposit; and (4) The Normandie Oz has no right to relief under the Agreement. Interra-Sky also seeks its attorney's fees and costs. (Docket Entry No. 7 at 13).

While this suit was pending, Interra-Sky continued to market the Hotel. Interra-Sky recently received a letter of intent from a prospective purchaser willing to buy the damaged Hotel at the original $8,000,000 price. (Docket Entry No. 17 at 3). In response to the Hotel's potential sale, The Normandie Oz filed this emergency motion, asking the court: (1) to temporarily enjoin Interra-Sky from selling, transferring, or assigning the Hotel; and (2) for leave to file a cautionary

4

note under Article 44(2) of the Puerto Rico Property Registry Law. (Docket Entry No. 14). Interra-Sky has responded, and The Normandie Oz has replied. (Docket Entry Nos. 17, 18).

## II.     Analysis

### A.     The Application for a Temporary Restraining Order

To obtain a temporary restraining order, The Normandie Oz must show "(1) a substantial likelihood of success on the merits; (2) a substantial threat that [it] will suffer irreparable harm if the injunction is not granted; (3) [that] the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) [that] the injunction will not disserve the public interest." *CoreClarity, Inc. v. Gallup, Inc.*, No. 4:20-cv-601, 2020 WL 5095130, at *2 (E.D. Tex. Aug. 28, 2020) (slip op.) (citing *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008)).

#### 1.     A Substantial Likelihood of Success on the Merits

The Normandie Oz must show a substantial likelihood of success on the merits before the court considers the other requirements. *See Butts v. Aultman*, 953 F.3d 353, 361 (5th Cir. 2020). To do so, The Normandie Oz must "present a prima facie case," but it need not establish "that it will ultimately prevail on the claim." *CoreClarity*, 2020 WL 5095130 at *2 (quoting *Allied Home Mortg. Corp. v. Donovan*, 830 F. Supp. 2d 223, 227 (S.D. Tex. 2011)).

Under Texas law,[2] a claim for breach of contract has four elements: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018) (internal quotation marks omitted). The first two elements are not in dispute.

---

[2] Section 13.2 of the Purchase Agreement specifies that Texas law governs. (Docket Entry No. 1-2 at 30).

5

The Normandie Oz alleges that Interra-Sky breached Section 9.1 of the Purchase Agreement, which obligates Interra-Sky to "maintain the Property in its current condition, subject to wear and tear for a property of its nature." (Docket Entry No. 1-2 at 9). The Normandie Oz asserts two theories of breach: (1) Interra-Sky failed to secure the property, which allowed vandals to damage it; and (2) Interra-Sky did not remedy the resulting damage. The Normandie Oz has not shown a substantial likelihood of success under either theory.

First, The Normandie Oz has not shown that it is substantially likely to prove that Interra-Sky negligently failed to secure the Hotel. The Normandie Oz relies solely on a letter from Aida Belen Rivera-Ruiz,[3] in which Rivera-Ruiz states that, at a meeting of developers and government officials, there was "concern . . . around the 6th floor, where they felt that the building owner was apathetic to the state of the building and was negligent in the way he secured the property, which allowed for significant damage to many of the historic character-defining features of the property." (Docket Entry No. 14-1 at 71–72). That letter does not show the cause of the Hotel damage. A group of unnamed individuals expressing concern about damage to one part of the Hotel, and speculating as to the cause of that damage, does not establish that Interra-Sky negligently failed to secure the Hotel, resulting in the extensive damage to the walls, ceiling, and floors shown in the February 2020 photographs.[4]

---

[3] The record is unclear as to Rivera-Ruiz's relationship to the parties. In his affidavit, Ezra Ishay, Manager of The Normandie Oz, identifies Rivera-Ruiz as "the consultant." (Docket Entry No. 18-1 at 3).

[4] The Normandie Oz also submitted records of "mass riots and protests" that led to property damage in San Juan, where the Hotel is located. But the records detail events in July 2019, and The Normandie Oz's claim is based on damage to the Hotel that occurred between August 2019 and early February 2020. (Docket Entry No. 1 at 3–8).
=us&code=us70006vll (last visited November 17, 2020). "[S]light" damage occurs at MMI level six. *The Modified Mercalli Intensity Scale*, U.S. GEOLOGICAL SURVEY, https://www.usgs.gov/natural-hazards/earthquake-hazards/science/modified-mercalli-intensity-scale?qt-science_center_objects=0#qt-science_center_objects (last visited November 17, 2020). The record does not show that the earthquakes likely damaged the Hotel.

Between December 2019 and early February 2020, a series of earthquakes hit Puerto Rico. Interra-Sky alleges that, because many of those earthquakes were of "magnitude 5.0 or greater," the Hotel was likely damaged by one or more earthquakes. (Docket Entry No. 17 at 9). The damage shown in the February 2020 photographs appears more likely to have been caused by earthquakes than vandalism. Based on the current record, The Normandie Oz has not shown a substantial likelihood of success in proving that the damage was caused by Interra-Sky's negligent securing of the Hotel from vandalism.

The Normandie Oz's second theory, that Interra-Sky breached its duty to "maintain" the Hotel because it did not remedy the damage, also fails. Interra-Sky's obligation was to "maintain the Property in its current condition, subject to wear and tear for a property of its nature." (Docket Entry No. 1-2 at 9). The Agreement does not define "maintain" or "wear and tear." Under Texas law, the court gives undefined contract terms their "ordinary and generally accepted meaning," read "in context and in light of the rules of grammar and common usage." *RSUI Indem. Co. v. Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015); *accord Wells v. Minnesota Life Ins. Co.*, 885 F.3d 885, 890 (5th Cir. 2018). "Maintain" has multiple meanings, the most relevant of which is "[t]o care for (property) for purposes of operational productivity or appearance; to engage in general repair and upkeep." *See* MAINTAIN, Black's Law Dictionary (11th ed. 2019). "Wear and tear" is "[d]eterioration caused by ordinary use; the depreciation of property resulting from its reasonable use." *See* WEAR AND TEAR, Black's Law Dictionary (11th ed. 2019).

The damage to the Hotel shown in the record was not wear and tear "caused by ordinary . . . [or] reasonable use" of the property. *Id.* The photographs show extensive damage, (*See* Docket Entry Nos. 1 at 7–8, 14-1 at 59–64), including structural damage well beyond "expected" or "gradual[] deterioration," *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 555 (7th Cir. 2008); *see*

7

*Kallman v. Radioshack Corp.*, 315 F.3d 731, 740 n.5 (7th Cir. 2002) ("extensive damage . . . did not constitute 'reasonable wear and tear'"). The Normandie Oz agrees. (*See* Docket Entry No. 1 at 8) (stating that the damage is "not, by any stretch of the imagination, normal 'wear and tear.'").

Interra-Sky's obligation under the Purchase Agreement to "maintain" the Hotel did not obligate it to repair extensive damage that goes far beyond wear and tear. The Agreement uses the terms "restore" and "repair," but not in Section 9.1, which supports the argument that Section 9.1 imposed a less exacting standard. That conclusion is reinforced by Section 6, which obligated The Normandie Oz to "restore or repair any damage" caused by its entry onto the property. (Docket Entry No. 1-2 at 6). The parties knew how to create a duty to repair damage any damage and restore the Hotel to its condition before any damage. The parties did not draft Section 9.1 to create such a duty.[5]

### 2. A Substantial Threat of Irreparable Harm Absent an Injunction

The Normandie Oz asserts that unless a temporary restraining order is granted, Interra-Sky may sell the Hotel, making it impossible for The Normandie Oz to acquire it. But the crux of The Normandie Oz's complaint and requested relief is the return of the $800,000 deposit. (Docket Entry No. 1). Because recovering that deposit would address The Normandie Oz's asserted injury, the injury is not irreparable. *See Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 312 (5th Cir. 2008) (an injury "is irreparable only if it cannot be undone through monetary remedies." (quoting *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472–73 (5th Cir. 1985)).

---

[5] Interra-Sky also points to its course of dealing with The Normandie Oz's predecessors-in-interest and the changes in the various Purchase Agreements executed in 2017 and 2018. Because the Purchase Agreement has a merger clause, and because the Agreement is unambiguous, that history does not affect the analysis or outcome. (Docket Entry No. 1-2 at 13).

8

### 3. Weighing the Parties' Threatened Injuries

Interra-Sky alleges that, if a temporary restraining order is granted, the potential sale of the Hotel may be derailed. According to Interra-Sky, a potential purchaser has engaged in substantial negotiations, but remains free to walk away. The potential seller is also allegedly willing to pay the original purchase price of $8,000,000, notwithstanding the extensive damage. On the current record, the court finds that The Normandie Oz's threatened injury, the loss of its deposit, does not outweigh the potential damage that a temporary restraining order could cause to Interra-Sky.

### 4. The Public Interest

The Normandie Oz asserts that the public interest "is neutral because the injunction affects" only the parties. (Docket Entry No. 14 at 16). At the motion hearing, Interra-Sky argued that a temporary restraining order would hinder the potential sale and development of the Hotel, contrary to the public interest. In light of the economic conditions in Puerto Rico caused by multiple natural disasters and the coronavirus pandemic, the court finds that potentially hindering the sale and development of the Hotel would disserve the public interest.

Because The Normandie Oz has failed to meet its burden under the four requirements for a temporary restraining order, the court denies its request.

### B. The Request for a Cautionary Note Under Article 44(2) of the Puerto Rico Property Registry Law

Section 13.11 of the Purchase Agreement prohibits The Normandie Oz from filing a cautionary note unless it is both pursuing "an action for specific performance under Section 11.1" and "not in default" of the Agreement.[6] (Docket Entry No. 1-2 at 11) (uncapitalized). Section 11.1

---

[6] Section 11.1 prohibits filing "a lis pendens . . . or similar notice" unless those conditions are met. (Docket Entry No. 1-2 at 11) (uncapitalized). The Normandie Oz recognizes that a cautionary note under Puerto Rico law is equivalent to a lis pendens. (Docket Entry No. 14 at 10); *see also Correa Sanchez v. Registrador*, 113 P.R. 581, 13 P.R. Offic. Trans. 750, 760 (1982) (discussing the "common purpose" of cautionary notes and lis pendens).

9

authorizes The Normandie Oz to "pursue an action for specific performance" if Interra-Sky failed "to execute the Deed and the other documents required to be delivered" or "to deliver the Property" at closing. (Docket Entry No. 1-2 at 10). The Normandie Oz has not alleged or shown that Interra-Sky failed to do either. Because The Normandie Oz is not pursuing an action under Section 11.1 of the Purchase Agreement, Section 13.11 bars it from filing a cautionary note.

### III.    Conclusion

The Normandie Oz's emergency motion for a temporary restraining order and for leave to file a cautionary note, (Docket Entry No. 14), is denied.

SIGNED on November 18, 2020, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge